May it please the court, Judge Traxler. I'm Andrew McKenzie. I'm from Greenville, South Carolina. With me today is my co-counsel on this Consolidated Appeal. Mr. James Brown is from Beaufort, South Carolina. I represent Chris Latham. He represents Wendy Moore. This case has to do with the convictions of Mr. Latham and Ms. Moore in a murder-for-hire case that came out of Charleston, South Carolina. Ms. Moore was convicted of conspiracy to commit murder-for-hire, solicitation of murder-for-hire, travel in or use of interstate commerce in a murder-for-hire, possession of a firearm in a crime of violence. She received a sentence of 180 months. Mr. Latham was convicted of travel in or use of interstate commerce in a murder-for-hire. The jury deadlocked as to him on the conspiracy and firearm charges. He received a sentence of 120 months. The indictment in this case alleged only that the defendants caused another to travel in interstate commerce. So the issue, the first issue in the case is whether the district court constructively amended the indictment by charging the jury that the government met its burden of proof if it proved that the defendants caused another to travel in interstate commerce or if they used or caused another person to use a facility of interstate commerce and whether this was error per se. The other two issues in the case which will be handled by Mr. Brown if it pleases the court are whether the district court erred in admitting hearsay statements of a deceased co-conspirator which were not subject to cross-examination and then whether the district court erred in admitting character evidence in violation of Federal Rule of Evidence 404. As to constructive amendment of an indictment, this court reviews cases of constructive amendment of indictment de novo and this court has maintained that a constructive amendment of an indictment is error per se and is not subject to harmless error review and that was reaffirmed by this honorable court as late as 2012 in the United States v. Whitefield. We haven't held that. We've observed that in recent years. We haven't held that. Isn't that right? It hasn't been the holding of the court. It was my understanding that in United States v. Whitefield that the court, I believe it was Judge King, held that constructive amendment of an indictment. You're quite right that we have said and reset it, but it hasn't made the difference. When I say a holding, it hasn't made the difference to anything. But as far as a grand jury indictment, that derives, of course, from the Fifth Amendment. The defendant has a right to be tried only on charges that are set by the grand jury. Constructive amendment occurs when the government, through its presentation of the evidence or its argument to the jury or the court, through its instructions to the jury or both the government and the court, broaden the basis for conviction. Of course, the key to it is whether the defendant has been tried on charges other than what's in the indictment. It's really a matter of whether the elements of the charge have changed. A mere variance would not constitute a constructive amendment. A mere variance is a situation where there's a difference between the indictment and what is proved at trial or a difference between what's in the indictment and what is charged to the jury that doesn't broaden the basis for conviction. In this case, we're operating under Title 18, 1958, the Murder for Hire Statute, which can be committed by travel in interstate commerce or use of interstate commerce. They are not the same thing. They're alternate means of committing the offense. A person can travel without using interstate commerce. A person can use interstate commerce or facilities of interstate commerce without traveling in interstate commerce. Each requires proof of something that the other does not. The indictment in this case, in Counts 1 and 3, allows travel but not use. The caption of those counts in the indictment said use, but the caption does not control. The charging paragraph is what counts. There's Fourth Circuit authority on that. It's cited in the brief. It's interesting to note in this case what was charged by Judge Gergel, the trial judge, at the beginning of the trial. At the beginning of the trial before the evidence was presented, Judge Gergel told the jury that these two defendants are charged with inducing others to travel in interstate commerce. He said nothing about use. And that charge by Judge Gergel was correct. That was exactly right. At that point in the trial, the constructive amendment of the indictment had not yet occurred. However, as the government began to present its evidence, things began to change a little bit. There were two co-defendants who were not on trial, two co-conspirators, Samuel Yenawine and Aaron Wilkinson. And the government certainly presented evidence in the trial that Yenawine and Wilkinson traveled in interstate commerce. But the government presented no evidence that Latham or Moore traveled in interstate commerce. And the government presented no evidence that Mr. Latham caused anybody to travel in interstate commerce. The evidence against Mr. Latham went to use of facilities of interstate commerce. I thought it was that he used, I understand what you're saying, but I thought the things they found on his phone and the computer searches were in order to induce someone else to travel. Isn't that the government's theory? You're right. They offered circumstantial evidence that he used phones and computers. But there was no proof that his use of the phones and computers caused anybody to travel. They were saying that he used the phones and computers to contribute to the hit package that was presented to the co-conspirators. But that wasn't presented to them until they were already in Charleston or in Sullivan's Island, which is right outside of Charleston. I totally understand that you don't think the evidence was particularly overwhelming or anything like that, but I just think it might be too strong to say there was no evidence at all as to the travel. I mean, that was the government's argument at trial, right? Yes, and there was certainly circumstantial evidence of that. But what I'm trying to say as far as Mr. Latham is I don't know that there was really any evidence that his use of interstate facilities caused anybody to travel. So, I mean… Are you trying to say that you think there's evidence of the second thing after the or? Yes. No, you're not. But not of the first thing, travel. Is that what you're saying? That's exactly right. And this goes to the constructive amendment of the indictment only allays travel. But the evidence against Latham went to use. They talked about the phone and computers. There were several witnesses. This contributed to the constructive amendment. The government conceded in its brief that this was substantial evidence against the defendants. Can I ask a question? Did anyone define for the jury that phones and computers would count as facilities of interstate commerce? No, they did not, Your Honor. And I respectfully take the position that that is obvious in this day and age that, you know, the jurors are told that everybody's got a computer in their pocket. And they're told at the beginning of the trial that, you know, you've got to turn off your phones and cell phones and please don't, you know, read about this online or things like that. Well, no, I know people are familiar with phones and everything, but what counts as a facility of interstate commerce? You think that's just sort of a matter of lay knowledge? I would respectfully take the position that in this day and age it probably is. But the case against Latham was not exactly very strong. There was only evidence that he communicated with the one co-defendant more. There was no allegation that he traveled. I don't believe there was any allegation that he caused anybody to travel. As we said, the government did allege that he used phones and computers, but I don't know that there was any evidence that he used the phones and computers to cause anybody to travel. Unfortunately, you're out of time. That's what that red light means. You've got some time. You'll be coming back in just a little bit. Let's hear from Mr. Brown. May it please the court. I'm Jim Brown from Beaufort, South Carolina. I represent Appellant Moore and I'm arguing issues two and three on behalf of both Ms. Moore and Mr. Latham. I'd like to start by discussing what I think is the worst of the two errors here that I've alleged, which is the 404B violation. I say that because there's a lot of talk when we file the briefs about the legal issues, but as far as a jury trial, when a jury hears something about other crimes, specifically in a murder for hire, that there's another murder case lurking in the background, it chips away, essentially, at this presumption of innocence. Because we do characterize people in our lives. We do it in politics and sports and everything like that. In this case, we've got reference to a murder and arson in Kentucky. We know that the government's done the most it can to affiliate Ms. Moore with Mr. Unawine because he's the bad guy here. And so the references that go to Mr. Unawine may actually not only be proper, but it may have been proper for that character evidence to come out on cross-examination of, let's say, Mr. Tudor, if the defendants would have wanted that. But when they tie it into Ms. Moore, that's when it becomes an error. It's not necessarily erroneous to have Mr. Unawine's involvement in a prior murder arson to come out. But there are at least three references to Ms. Moore being involved that are cited in my brief. There are another two references that are in Mr. Tudor's testimony I did not cite. And contrary, with respect to my able adversary with the U.S. Attorney's Office, they actually did argue it as propensity evidence, both in their first close and rebuttal. And in fact, I think it goes along these lines that Mr. Unawine's the one who really led this plan because he's the most experienced criminal. Ms. Moore is just not that experienced, which certainly, absolutely brings in some criminal experience. And again, we've got reference, repeated reference, at least five times of Ms. Moore's involvement, and that is brought out. Then in the rebuttal, it comes back up again. And at that point, they talk about how Mr. Unawine had told her to, according to Mr. Tudor, dump the dropped phone to throw it away. And she didn't do that because she's just not as good at being a criminal. He's a criminal and she's not that good at being a criminal. So, they would be subject to introduction under 404B. I don't think that they would be admissible under 404B. But that procedure did not happen because, as the courts have talked about, as this court in McBride and McBride cites Johnson, both of those cases talk about the procedure there as a safety mechanism, which requires notice and requires a limiting instruction on that use. And I point that out because we had neither one of those here. But we, again, had it clearly argued at the end as propensity evidence. If it had been somehow limited to some other purpose, that might be different. Again, if it would have gone through the crucible of 404B, I don't believe it would have been admissible that way. And in this case, I don't believe this can be harmless error given the fact that the evidence, circumstantial evidence, about Ms. Moore and Ms. Latham are closely tied. We're talking about joint efforts to print documents and things of that nature. Whatever the ultimate purpose is, it's still a joint effort. Nonetheless, she's convicted on two other counts that Mr. Latham is not convicted on. He's not charged in one of the four counts that she's convicted on. And so I believe that actually demonstrates that that tipped even more so into the prejudicial column because that evidence was considered that way. How does it affect Latham? Because I do have a duty to him, too, since I'm arguing on his behalf. They tie that back into this lawyer payment scheme, which is, I believe, actually proper. I'll concede, I think, that the discussion of the payment is proper. I know there's a Roseman case out there that was actually argued at the district court, and I'm not going to take exception to that. But I believe that part's proper, and it starts to become a suggestion that there's money laundering, not hiding the money or not a shell, but actually cleaning dirty money. As in a criminal enterprise involving the lawyers, that then steps into Mr. Latham, too, because he's the main person that begins the payment process for each other's lawyers. And so I believe that affects him because that's looped back in as being the same lawyers from Kentucky that led this hit and then also, in turn, were involved in this prior murder case. Interestingly, there may be other issues on this same evidence. It's clearly hearsay because I don't believe anybody has firsthand knowledge that Ms. Moore was charged with murder or arson. And secondly, it may not even be truthful testimony because, in fact, the U.S. attorney corrects that testimony at one point when he indicates that she was not, in fact, ever charged with a crime, which makes all of that previous information false, which is another issue. But I believe the biggest error is that the information that was given was character evidence and used that way improperly. Didn't you get a limiting instruction for Request 1? There wasn't. And candidly, the first two references that also reference Moore were in response to questions by Ms. Moore's counsel on the first set and then the second one by Mr. Latham's counsel. And certainly, Mr. Latham could have argued that he didn't realize that that was what the purpose was. Mr. Smuts, the trial lawyer for Mr. Latham, actually might have been able to get into that information had it not been a joint trial. And so there may have been a severance that should have happened had Mr. Latham's attorneys insisted on bringing out that previous murder-for-hire information to try to point Ms. Moore and Yenawine as setting him up. That wasn't explicitly argued, but I do think that that would have presented a different problem, Your Honor. But I would say this. It's not responsive to the questions because they asked whether or not there were some lawyers involved. And the answer could be yes. It's cross-examination. And the answer could be yes, it was a lawyer that knew Mr. Yenawine and Ms. Moore. But then they go into this detail about murder and there being separate cases representing her, too. And that's not responsive. That's not the question that was asked. I would like briefly to reference the second issue, the hearsay confrontation issue. I can't ask a panel to overrule another panel. I would say there's a split of authority. I would suggest that there's a different way to deal with this. I believe the authority is pretty clear. Pre-Crawford, ironically Crawford being the extra protection for criminal defendants, that pre-Crawford, I don't think this would have come in under Brewton. And certainly post-Crawford, ironically now it does come in as non-testimonial. Although I suggest that the statements regarding that outside of Dargan are dicta from the Supreme Court. And, in fact, Bullcoming and Davis both talk about looking at things another way. Bullcoming, I think, has a footnote, which only has four justices, where it talks about there being a primary purpose. And I would suggest that if you use that, the primary purpose actually of Mr. Tudor taking this statement is to be used later to recount facts in a criminal proceeding. He's a snitch. He's a career criminal. From 17 on, he's been cutting deals. He snitched the week after Mr. Unawine committed suicide. So I do suggest the primary purpose would be that. And I'm out of time. Thank you. Okay. Thank you. Mr. DeHart? May it please the Court. Chief Judge Trachsel, Judge Motts, Judge Harris, my name is Rhett DeHart. I'm a federal prosecutor at the U.S. Attorney's Office in Charleston. And I had the pleasure of prosecuting the appellants before the District Court. I wanted to first respond to a question that Judge Harris had. And I think she made this point perhaps better than the government made in its brief. The evidence shows in the pre-sentence report that Chris Latham created most of the hit package. At least seven of the 11 items in the hit package were created by Mr. Latham. He used his Internet at his Bank of America office to search for and print the five Google Maps of the victim's home. It was found in the hit package. And he used his iPhone to take a picture of the victim's car. It was found in the hit package. It's clear that he used his instrumentalities of interstate commerce to induce Yenawin and Wilkinson to travel in interstate commerce. So our point is there was an argument that there was no evidence that Latham had anything to do with the travel in interstate commerce. But creating the hit package and funding this murder for hire, he clearly induced Yenawin and Wilkinson to travel from Louisville, Kentucky, to Charleston, to South Carolina. So I do want to commend Judge Harris for that. I think she made the argument better than we did. So you're saying that your evidence went to both points, both sides of the oar. Is that what you're saying? Yes, Your Honor. I want to make clear, as we said in our brief, that the indictment and the evidence at trial focused on travel in interstate commerce. And this is a tricky distinction. But under the murder for hire statute in 1958, there are two closely linked ways to prove the interstate commerce element. Two ways to prove one element. It can be proved by travel in interstate commerce or a facility of interstate commerce. Our position is not separate elements. There are just two ways to establish the interstate commerce element. Well, you charged in the indictment just one, right? Yes, ma'am. We charged in the indictment just one. But back to Judge Harris's point, is there any evidence? No, no, I understand that. But you tell me that there are just two ways of proving the same thing and not elements. So you think that you can just charge one in the indictment and it wouldn't matter if you had put in evidence totally of the other. Is that your position? It is, Your Honor. And let me just step back for a second. This was a difficult trial. It was hard to prove that Chris Latham, the highest paid banker in Charleston and a pillar of the community, Wendy Moore's beautiful administrative assistant with an MBA degree, it was hard to convince a jury that people of this caliber would be involved in a murder for hire. But what was not contested and what was not disputed in any way is whether this murder for hire plot affected interstate commerce. That was simply a non-issue. So this case is not a constructive amendment because the elements were not changed where the defendants were convicted of a crime other than charging an indictment. There's only one murder for hire statute, unlike the crime in Floresca that we've heard so much about. If you look at the facts in the 1994 decision in Floresca, the indictment charged a witness tampering statute involving testimony at a court proceeding. The jury instructions charged an entirely separate witness tampering statute involving communication to a law enforcement officer. There are two statutes, two separate elements, two different specific intents, two different factual scenarios. There were two separate witness tampering statutes with different elements. That did not happen here, Your Honor. This case is distinguishable from Floresca. The same situation in U.S. v. Randall. I think I understand the distinction. I don't want to use up all your time. But let's take another case, not this case. And I just want to be sure I understand your position. Then you say that you can charge just travel in or cause another to travel in interstate commerce. But you could put in, to prove that, only evidence of using facilities of interstate commerce. Is that what you're saying? No, ma'am. I don't think it could be. I thought that was where your argument went. No, ma'am. And forgive me if I misspoke. That's not what I meant. But that's not the situation in this case. There was overwhelming. I know it's not. That's why I asked you hypothetically if that was your position. That was not my position, ma'am. I don't think you could charge travel and then at trial have no evidence of travel and just evidence. Well, why is that so if they aren't separate elements? Well, Your Honor, this may just be. Separate elements in the alternative, to be sure. We take the position, Your Honor, that they're not separate elements. That there are two closely linked ways of proving one element. The element is, did it affect interstate commerce? No, but, okay, my question still stands. Why, if you're right, why couldn't you just be charging travel and show, and that's all you, so you did just on the first one and then had all your evidence about the facility of interstate commerce? Well, in that situation, the jury instructions would be completely different than the indictment, and that would lean more toward a constructive amendment. In that situation, the defendants would be convicted of a crime different than charged in the indictment, but that's not what happened here, Your Honor. There was overwhelming evidence. I mean, the travel in interstate commerce was uncontested. I think we all agree with that. And as a practical matter, the evidence of use of instrumentalities of interstate commerce was also overwhelming. Well, what was the evidence about Latham's? Is he the gentleman? Yes, ma'am. His travel. Tell me about the evidence of his travel. There was no evidence that he traveled. That's what I thought. So you just told me it was overwhelming. No, I said that the evidence that the plot involved interstate travel was overwhelming and uncontested, and both defense lawyers actually… But each person gets their own charges, right? You can't just say there's a big interstate robbery here and there's lots of drugs, but you have to tie it to each person, right? Well, yes, ma'am, but if they're charged with a conspiracy to commit a murder for hire and aiding and abetting a murder for hire, the charges that were tried together and all we had to prove is Chris Latham aided and abetted this murder for hire, which involved travel and interstate commerce. No one… I mean, just as much as a trial in the closing arguments, both defense attorneys conceded that the hitmen traveled from Kentucky to South Carolina. That was undisputed. Now, did Chris Latham himself travel? No, but we don't need to prove that. I hope I answered that question for you, but it goes back to Judge Harris's point that when he created this hit package and then funded it, he clearly induced others to travel and interstate commerce. Probably not saying that very well, but again, Your Honor, I think… You're doing fine. I would also point to the Tenth Circuit decision that was really right on point, United States v. Gonzalez. It was a very similar case. The defendants were indicted for traveling interstate commerce to promote a drug conspiracy. The indictment charged travel only. The jury instructions charged traveled in or used a facility of interstate commerce. It's really almost an identical situation as Judge Gergel's jury instructions in this case. And the Tenth Circuit held that… They affirmed the conviction and held that it was such a minor error and the evidence of the interstate commerce element was overwhelming and uncontroverted. And because of that, the defendants could not meet the fourth prong of the plain error test. That Gonzalez decision is directly on point. Granted, it's not a Fourth Circuit decision, but it is a public decision in the Tenth Circuit. And if you look at the decisions and… I will have to say this. I don't want to go down a road perhaps I don't have to go down, but we take the position this is not a constructive amendment. This case is easily distinguishable from Floresca and Randall and the true constructive amendment cases. But I would note that the Floresca decision is inconsistent with later Supreme Court decisions. It's inconsistent with the Johnson decision in 1997, the Nader decision in 1999, and the Cotton decision in 2002. If you look at the errors in those cases, they were much, much more serious than the alleged error here. In Johnson, the jury instructions admitted an essential element of the crime. The defendants didn't object, but the Supreme Court under plain error upheld the conviction anyway despite the fact that the jury instructions admitted an entire element. And the reason they did so is because evidence of that omitted element was overwhelming and uncontroverted. The same thing in Cotton, and I'm sure Judge Traxler and Judge Motz remember that case. It was a Fourth Circuit case, but in that case, the indictment and the jury instructions admitted an entire element of drug quantity, and the Supreme Court unanimously affirmed that case despite the omission of an element from a jury instruction and the indictment. It held it didn't satisfy the fourth error of the Alano test. In both those situations, omitting an entire element is much, much more prejudicial to a defendant than what Judge Gergel did by just putting an alternative prong to satisfy a single element. I think we would all admit that that's a much, much more serious error, yet in case after case, the Supreme Court has unanimously held under plain error in that situation. If the evidence on the challenge point is overwhelming and uncontroverted, it doesn't meet the plain error test. And the government's in a far, far stronger position in this case with both the evidence and the minor nature of the error. And there's another case I would like to bring to the Court's attention. We supplemented our brief recently pursuant to Rule 28J and brought to the Court's attention a Ninth Circuit decision that was decided after all the briefs in this case were due. It was decided this summer, United States v. Conte, it was a pure construction amendment case. The defendant was charged with conspiring to defraud the United States. The district court charged just a general conspiracy. That seems like a true constructive amendment case. The indictment charged one crime. The jury instructions charged another crime. And the Ninth Circuit held in that situation that it affirmed the conviction and said the defendants couldn't even prove that the jury instruction error, the constructive amendment, met the third prong of the plain error test. They held that they couldn't prove that it affected substantial rights, so they didn't even go to the fourth prong. That's a recent decision. It seems like Floresco is a little bit of an outlier with the last 20 years of plain error analysis, and I'm not criticizing the Fourth Circuit and Floresco. When they decided that case, it was right after Alano, and we've all had the benefit of 20 years of plain error analysis, but Floresco does seem to be inconsistent with many Supreme Court cases since then. Can I take you back just quickly to sort of the threshold question about whether there was a constructive amendment in this case? Because I just want to make sure I understand your position, because the thing about maybe they're not really different elements is tripping me up a little bit. So are you conceding that if this jury in this case reasonably thought that it could convict just on the facilities prong, that would be a constructive amendment, right? I took your argument in the brief to be the jury could not reasonably have thought that in light of the full context. In light of the full context, Your Honor, it's the latter. We don't think the jury could have reasonably reached that conclusion. If it did, that would be a constructive amendment. Yes, Your Honor. I think we would take issue that it would be subject to automatic reversal. I understand that. Yes, Your Honor. I just wanted to clarify that. That is. But I would note for the record how isolated either there were eight references in the jury instructions in the verdict form to strictly travel and interstate commerce and two just isolated references, just like the court in Gonzales where Judge Gergel said travel in or use facilities is closely linked. So it was very isolated, and I think as we noted in our brief, there's really no way the jury could have convicted them just on the use of instrumentalities. I would like to clear that up. Your Honor, if it pleases the court, I'll go on to the remaining argument. I hear you saying that, but why is that so? That there's no way the jury could have convicted them only on instrumentalities. Well, Your Honor, Judge Gergel read the indictment word for word to the jury. It just had travel and interstate commerce. The verdict form, unlike the verdict forms in Floresca and Rando, the verdict form reprinted the indictment exactly, and it said only travel and interstate commerce. So you're relying on that, not on the evidence that was presented? I thought in response to my colleague's question, you were saying the evidence here would not have permitted the jury to convict just on the facilities. Yes, Your Honor, I don't think—yes, ma'am. It seems to me it could have. I didn't understand that argument. Well, Your Honor, it seems like to me when both elements are overwhelming and undisputed, it's difficult to parse out that the defendants at trial all conceded that if there was a murder for hire plot, did the hitmen travel and interstate commerce from Kentucky to South Carolina? Both of the appellants admitted that. That was not what this trial was about, Your Honor, and I don't mean to be in any way flippant. No, no, I appreciate your argument. But it is everyone at trial conceded that if there was a murder for hire, that it involved interstate commerce, and the hitmen traveled from Louisville to Charleston. This entire trial was not about that. This entire trial was about how this rich banker and his beautiful mistress could get involved in such a crazy, heinous crime. That's what made this so hard. The interstate element, interstate commerce element, was just not an issue in any way, shape, or form, and everyone conceded that. I think I asked my question imprecisely. I didn't mean to be saying, in light of the evidence presented, what could the jury reasonably have convicted on. I understood your argument in your brief to be looking at the full context of the case, the verdict form, the exact charge to the jury, where the judge starts by saying, look, this is what they're charged with, travel. And then later goes on to say, and by the way, here's everything that happens under the statute, that when you look at the full context of the instructions, the verdict form, the arguments made at trial, the jury would, quite apart from the evidentiary question, this jury would not have understood that it was entitled to convict based on use of facilities. I thought that was the argument in your brief. I believe that is, Your Honor. I mean, if you look at the record, that is the argument. I bet if she phrases it still another way, you're going to agree with her. That is our argument, Your Honor, that the verdict form, the indictment, most of the instructions and the arguments at trial focus on travel and interstate commerce. But I would note, as the Tenth Circuit noted in Gonzales, traveling and interstate commerce and use of a facility in interstate commerce are so closely linked. And I would even note, this is a minor point, but at trial one of the lawyers, a lawyer for Ms. Moore, actually conflated travel and use of instrumentalities in their closing argument and basically just said, Wilkerson traveled interstate commerce and used facilities of interstate commerce when he brought the gun and the car from Louisville to Charleston. And I guess our point is we agree with the Tenth Circuit that they're so closely linked that it really is, in some levels, in a case like this, a distinction without a difference. I hope that answers your question, Your Honor. Very briefly, too, the argument after the 404B violation and the character evidence, we would note, Your Honor, that the defendant who had previously committed a murder, an arson, Sam Unermeyer was dead. He was not tried. This could not be prejudicial to him. And Judge Gergel specifically, there was some confusing testimony about Ms. Moore having a lawyer in that prior murder case. Judge Gergel instructed the jury that she was only a witness. She was married to Unermeyer at the time. She was never charged. And the jury was told she was only a witness. And so this is not 404B evidence because Unermeyer wasn't present. He wasn't offended. And I would also make an analogy to the old 404B case this case had in 1994, United States v. Kennedy. This court has held the 404B evidence. Evidence is not 404B evidence if it's necessary to complete the story of the crime. In this case, given that Yen-On-Wan was dead, it was important for the jury to hear that the alleged hitman, who was not on trial, was previously convicted of murder and arson. It helped make it more believable. If all you have is this rich banker and his beautiful mistress, it kind of seems far-fetched, but you realize that the man that they hired, the man they gave the hit package to, had previously been in prison for murder. It makes it a lot more believable. And I would note also the defendants raised that argument. I mean, they brought that evidence out, so you couldn't blame the government for that, and there was no objection to it. But we take the position that it was not unfairly prejudicial. Ladies and gentlemen, I have a minute and 15 seconds. If you all have any more questions, I'm... I think we understand... The appellants are taking the position that 1958 does lay out two alternative means of violating the statute. Those two alternative means, I would concede, sometimes can be closely linked. That's what happened in the Gonzalez-Ediza case that the government has cited in their brief. In that case, you've got a situation where the one co-defendant calls the other on the telephone and says, where are you? I'm in Albuquerque. I need you to get to Tulsa right away, something like that, for the purpose of distributing drugs. But that's not what happened in this case. In this case, Latham didn't call anybody. He didn't text anybody. He didn't email anybody. The theory against him was that he used the phones and computers to help put together the hit package. But the hit package was not delivered. It didn't induce anybody or cause anybody to travel in interstate commerce. It was delivered on Sullivan's Island after the co-defendants were already there. I don't know that there was any evidence that the co-defendants even knew anything about a hit package. There was no evidence that he caused anybody to travel. It was only, as to him, it was only evidence of use. And also... Well, he was convicted of conspiracy, right? They were deadlocked on conspiracy. He was just convicted of the... Of travel or use or travel, however you want to say it. A few seconds left. One thing I would point out about the cases cited by the government, there's a common thread throughout all those cases, Johnson, Nieder, Cotton, Conte. All of those cases had to do with an admission, an indictment error or an instructional error where there was an admission of one of the elements. In each one of those cases, all the defendants were ultimately convicted of what they were charged with. There was not a broadening of the indictment, and we're taking the position that that's not what happened here. Thank you. May it please the court, very briefly, the issue at trial, as the U.S. attorney just indicated, was whether the actions were for the purpose of having a murder for hire. It's not that the big issue at court wasn't about whether somebody printed something. It was whether or not this had some other innocuous purpose to it. And the idea that Mr. Unawan's past completes the picture, which may be true as to him, if you don't reference Miss Moore or then loop back in the lawyer issue with Mr. Latham, that may be fine, but when you start to use it that way, that is exactly propensity evidence. That clears up the picture because this is a murderer and his co-murderer. That's how it clears the picture up, through the propensity evidence. And on page 1650 of the record, the same U.S. attorney in rebuttal talks about Miss Moore's criminal activity being more consistent with her past than Mr. Latham's. And that's a direct reference. There's no painting of the picture. It's painting for anything except that she is a prior criminal. And that's the same propensity again. Thank you. You and Miss McKenzie are court-appointed. We appreciate very much your undertaking the representation of this client.
judges: William B. Traxler Jr., Diana Gribbon Motz, Pamela A. Harris